IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**WILLIAM J. LUNSFORD**                                                                 **PLAINTIFF**

**VS.**                                                            **CIVIL ACTION NO. 1:09cv617-JMR**

**CAPTAIN TINGLE OF STONE COUNTY JAIL,**
**AND SERGEANT. S. SMITH OF STONE COUNTY JAIL**              **DEFENDANTS**

___

### MEMORANDUM OPINION

This matter came before the Court pursuant to a Motion [38-1] for Summary Judgment on behalf of Defendant Captain Patrick Tingle, hereinafter Defendant, filed May 23, 2011. Defendant's Motion is accompanied by a Memorandum [39-1] in Support thereof. On June 22, 2011, the Plaintiff filed a Response [41-1] in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that Defendant's Motion for Summary Judgment should be granted. Accordingly, Plaintiff's claims against Defendant should be dismissed with prejudice.

### FACTS

From February 27, 2009 to April 15, 2009, Lunsford, detained be federal law officials, was jailed at the Stone County Jail in Wiggins, Mississippi. Pl.'s Comp. [1-1] 2. Recognizing that family members of those against whom he had testified against were in his zone at the jail, Lunsford contacted prison officials on March 7, 2009 and requested to be moved from his current zone because he was in fear of his personal safety. Attach. Ex "1" Mot. [39-3] 4. On that date, Lunsford was segregated from the general prison population until he was released into the custody of the United States Marshal Service on April 15, 2009. *Id*. at 3-5. During his stay in a segregated unit,

Lunsford was transported to an outside medical facility from March 18, 2009 to March 23, 2009. Attach. Ex. "2" Mot. [39-4] 24-30. In total, Lunsford, spent forty-one days in the Stone County Jail.

In his complaint, Lunsford alleges that the Defendant did not permit him to go outside his cell for recreation or use the telephone. Pl.'s Comp. [1-1] 2. Lunsford also alleges that despite assurances that his personal effects, including mail and legal papers, would be mailed to his home address, his property was never received. *Id.* at 3. Lunsford claims that the Defendant retaliated against him for his complaints about his lack of recreation time or telephone use and that the Defendant conspired with others to deprive Lunsford of his recreation and telephone rights, to retaliate against him and to withhold his personal property. *Id*.

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d

1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence "'in the light most favorable to the party resisting the motion.'" *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 407 (5th Cir. 1983)).  To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact.  *See Howard*, 783 F.2d at 1315.

## ANALYSIS

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights.  Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States.  *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981).  A plaintiff cannot succeed merely by showing any deprivation of his rights.  Section 1983 was intended to protect rights protected by federal law.  *Karmi-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985). Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights.  It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers.

In *Monell*, the Supreme Court extended § 1983 to municipalities upon a showing of a violation that results from the adoption and enforcement of an official, yet unconstitutional, policy

or custom. This policy or custom may be established by either "by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. *Monell* and later decisions reject municipal liability predicated on respondeat superior, because the text of section 1983 will not bear such reading. *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). As the *Monell* court stated, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ( "[I]solated unconstitutional actions by municipal employees will almost never trigger liability."). It is necessary, therefore, for a court to distinguish between violations caused by employees solely as individuals and those that can be fairly attributed to conduct by the individual in her official capacity and thereby to the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. To prevent the collapse of a municipal liability analysis into a respondeat superior analysis, a plaintiff hoping to establish municipal liability through actions of an employee must now establish the requisites: "a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom." *Id.* at 578.

The first requirement, a policy maker, demands proof that a policymaker "with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010). It is not in that an official's decisions are final that an employee becomes a policymaker; rather the official is "one who takes the place of the governing body in a designated area of [municipal] administration." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). A policymaker devises goals with regard to a specific municipal function and establishes the means for reaching those goals. *Zarnow*, 614 F.3d at 167.

Once a policy maker is identified, courts must determine if the action constitutes a policy or custom of the municipality. A custom or policy is often established by a formal statement made by an official policy maker. However, a well-settled, common practice of officials or employees, though not formally expressed, can "constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. A showing of a common pattern of this sort is only necessary when the actors are not policymakers; a custom or policy can be established by a single unconstitutional action by a policymaker. *Zarnow*, 614 F.3d at 169. A municipality will no doubt be liable for administration of a facially unconstitutional policy or custom, however even a "facially innocuous policy will support liability if it is promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (internal citations omitted).

Lastly, *Monell* demands that the policy or custom must be the moving force behind the constitutional violation. The Fifth Circuit has put forth the following standard:

> *Bryan County* underscores the need for *Monell* plaintiffs to establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). These requirements must not be diluted, for "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.

*Snyder v. Trepagnier*, 142 F.3d 79, 796 (5th Cir. 1998) (citing *Brown*, 520 U.S. at 415 (1997)). The Fifth Circuit has noted that this third prong is an extremely heavy burden for plaintiffs to meet. *Piotrowski*, 237 F.3d at 580.

Lundsford makes his claims against the Defendant in both his individual and official capacities. The Court will turn first to claims against the Defendant in his official capacity and then consider the claims against Defendant in his individual capacity.

**I**.

The Court notes that Lunsford's official capacity claims against the Defendant constitute a claim against the office in which he occupied at the time of the alleged incident and ultimately are, in essence, a suit against the municipality. *See Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005). Therefore, to the extent Lunsford brings this action against theDefendant in his official capacity, he must establish a constitutional violation, and in addition must satisfy the requirements necessary to impose municipal liability. However, Lunsford's complaint, read liberally as this Court is obliged to do[1], does not allege any policy promulgated by the jail to deprive the prisoners of recreation and exercise, to restrict telephone use, to retaliate against those who voice complaints about the conditions of their confinement or to withhold inmates' personal property. Accordingly, without any allegation of such a policy or that such a policy was the moving force behind the Defendant's actions, the claims against the Defendant in his official capacity cannot be maintained.

## II.

The Defendant raises the defense of qualified immunity to the claims made by Lunsford against him in an individual capacity. Qualified immunity shields government officials from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In evaluating a qualified immunity defense, the Court will follow a two-part analysis. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).[2] First, the Court must inquire "whether a constitutional right would have been

---

[1] "A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)(quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))(internal citation omitted).

[2] With *Pearson*, the Supreme Court of the United States has withdrawn from the "rigid order of battle" imposed by *Saucier* and "simply recognizes that [lower] courts should have the

violated on the facts alleged." *Morgan v. Swanson*, 627 F.3d 170, 176 (5th Cir. 2010). If the plaintiff satisfies the first step "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged conduct."*Pearson*, 555 U.S. at 232.

Lunsford first claims that the actions of Defendant deprived him of his "right to outside recreation/exercise." Comp. [1-1] 3. Under the jurisprudence of both the Supreme Court of the United States and the Fifth Circuit, prisoners do not enjoy an absolute right to outdoor exercise. *Maze v. Hargett*, 200 F.3d 814, 1999 WL 1093469 *3 (5th Cir. 1999)(citing *Green v. Ferrel*, 801 F.2d 765, 771-72 (5th Cir. 1986). However, the courts have recognized that evidence of confinement for long periods of time without any exercise or "the absence of outdoor exercise opportunities" can support an Eighth Amendment violation. *Id.* In evaluating the sufficiency of an inmate's Eighth Amendment exercise claim, a court must consider the size of the cell, the amount of time the inmate is locked in his cell per day and the overall duration of confinement. Importantly, these factors must be weighed in context of the particular facts of each case, specifically whether the circumstances "support the existence of any health hazard."*Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982).

Lunsford was held in the Stone County Jail for approximately forty-five days. His complaint alleges he was prohibited from outside recreation, but he does not claim that he was prohibited or unable to exercise within his cell or within the prison. Comp. [1-1] 2. Furthermore, Lunsford makes no claims that any deprivation of recreation or exercise created a health hazard or impacted his health in any way. Accordingly, under the facts presented in this case, the Court finds that Lunsford has not

---

discretion to decide whether that procedure is worthwhile in particular cases." 555 U.S. at 821. As recognized by the Fifth Circuit in *Morgan v. Swanson*, the *Pearson* opinion did not "abolish the first prong of the qualified immunity test but rather created a short-cut for courts to grant qualified immunity without undertaking the . . . task of determining whether a plaintiff's conduct resulted in a constitutional violation." 627 F.3d 170, 176 n.8 (5th Cir. 2010), *reh'g en banc granted on other grounds*, 628 F.3d 705 (5th Cir. 2010).

made an adequate showing of a violation of his right to exercise or recreation. *See Jackson v. Cain*, 2009 WL 565718 * 3 (E.D. La. 2009).

Next, Lunsford claims that he was deprived of his constitutional right "to reasonable access to the telephone" by the Defendant. With the recognition that "the well-established principle that lawful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen," prisoners have no right to unlimited telephone use, even to contact their attorneys. *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976); *See Lopez v Reyes,* 692 F.2d 15 (5th Cir. 1982); *McGrew v. Vannoy*, 2011 WL 2882603 *3 (M.D. La. 2011). Though prison regulations may present constitutional violations of an inmate's right to communication, regulations restricting telephone use do not violate the Eighth Amendment so long as the inmate does not suffer from an inability to communicate with the courts, counsel, family or friends. *See Hill*, 537 F.2d at 214.

In his complaint, Lunsford advances the argument that the Defendant informed him that he would not be able to receive phone calls or be allowed to make a phone call. Lunsford makes no allegations that this prohibition result in an inability to communicate with his family, any court or his counsel. After a review of the Segregation Activity Records submitted by the Defendant, it appears that Lunsford went through a mail call at least fifteen times while in custody and either received or sent mail four of those times. *See* Att. Ex. "2" [39-4]; *Id.* At 32, 34, 44, 59. According to these facts and the allegations made in his complaint, the Court finds no evidence of an inability to communicate with this or any court, counsel or family and that Lunsford fails to state a violation of his Eighth Amendment right to use a telephone or, more broadly, any right to communication.

Lunsford's third allegation is a retaliation claim. Lunsford alleges that the actions of the Defendant deprived him of the right to "freedom from retaliation for complaining about lack of outside recreation/exercise and lack of access to telephone." Comp. [1-1] 3. Certainly, prison

officials may not retaliate against or harm and inmate for complaining about a guard's misconduct. *Woods v. Smith* 60 F.3d 1161, 1164 (5th Cir. 1995). "To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). An inmate must demonstrate a deprivation of a specific constitutional right and that but for the retaliatory motive, the deprivation would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Trevino v. Gutierrez*, 20001 WL 2078638 *2 (5th Cir. 2011). To prove retaliatory intent, the inmate "must produce direct of motivation or . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Bibbs*, 6541 F.3d at 272-73(quoting *Woods*, 60 F.3d at 1166). The resulting harm, however, does not need be actionable in itself under § 1983 to support a successful retaliation claim. *Id.* at 272.

The Court need look no further than the intent and causation factors of this inquiry to resolve Lunsford's claim. In his complaint, Lunsford alleges no facts that even purport to demonstrate a retaliatory intent. In part seven of his "Facts" section, Lunsford claims that he informed the Defendant that he was a federal prisoner and as such, he was allowed daily outside recreation. He alleges the Defendant informed him, "it did not make a damn what he was, he was not going to get any recreation at this jail!" Compl. [1-1] 2. He also claims, in part eight, that he was informed by the Defendant he would "not receive a phone call." *Id.* Despite the liberal reading of the Court, Lunsford makes no allegations of intent, produces no chronology of events nor shows that but-for the Defendant's retaliatory intent, the deprivation of rights would have not occurred. All of Lunsford's allegations are conclusory, supported solely on Lunsford's personal beliefs, are not sufficient to support a valid constitutional claim for retaliation. *See Moore v. Thaler*, 2011 WL 3422784 * 1 (5th Cir. 2011). Accordingly, Lunsford's claim of retaliation is insufficient and is denied.

Last is Lunsford's conspiracy claim. Lunsford alleges that the Defendant conspired with others to deprive him of the same constitutional rights enumerated before: the right to outside recreation/exercise, reasonable access to the telephone, and from retaliation for complaining about lack of outside recreation/exercise and lack of access to telephone. Comp. [1-1] 3. To prevail on a § 1983 conspiracy claim, a prisoner must show the existence of a conspiracy and a deprivation of civil rights in furtherance of the conspiracy. *Thompson v. Johnson*, 348 Fed. Appx. 919, 922 (5th Cir. 2009)(citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)). A prisoner must show an agreement to commit an illegal act, and such proof cannot be conclusory, as "more than a blanket of accusation is necessary to support a § 1983 claim." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). However, "when each state action alleged to have harmed the plaintiff[] was determined to be qualifiedly immune, there [is] no need to reach the issue of whether a conspiracy existed to engage in those actions." *Hale*, 45 F.3d at 920-21. In short, when an officer is held to be entitled to qualified immunity on a constitutional claim, the conspiracy claim is not actionable. *Id.*

The Court has found that the Defendant is entitled to qualified immunity on all constitutional claims presented by Lunsford through his conspiracy allegations. As such, his claim is not actionable. However, out of an abundance of caution, the Court also notes that Lunsford's complaint is devoid of any proof that a conspiracy existed. No facts are put forth evidencing an agreement between the Defendant and other parties to commit a civil rights violation. As such, Lunsford's claim is built solely upon conclusory allegations, not upon any solid factual foundation. Accordingly, the conspiracy claim is denied.

## **III.**

Lunsford also claims that the Defendant deprived, and conspired to deprive, him of his right to legal papers, personal mail, address book and photographs. Lunsford alleges that theDefendant

informed him that his property, whish included legal papers, personal mail, an address book and photographs, would be mailed to him at his home address yet they were never received. Under the *Parratt/Hudson* doctrine, "a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995). The *Parrat/Hudson* doctrine is appropriate in three distinct situations: "(1) the deprivation was unpredictable or unforeseeable; (2) predeprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority." *Caine v. Hardy*, 943 F.2d 1406, 1413 (5th Cir. 1991)(en banc). The Fifth Circuit has long recognized that Mississippi provides adequate post-deprivation remedies through tort actions in state court. *See Nikens v. Melton*, 38 F.3d 183, 185-88 (5th Cir. 1994).

The failure of an officer to mail a prisoner's personal effects to his home address, to conspire to do so or for that parcel to not arrive at its stated destination is an unpredictable and unforeseeable event impossible to remedy by pre-deprivation procedures. In addition, Lunsford does not allege any facts demonstrating that Defendant was acting in accordance with prison guidelines and procedures in depriving him of his property, or agreed with any others in accordance with any policy to violate his due process rights. As this deprivation of property fits squarely in all of the *Parratt/Hudson* doctrine's well-considered applications, and a tort-based claim in Mississippi state court would provide adequate relief, Lunsford's claim is not well-taken and is denied.

## Conclusion

Based on the preceding analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary

judgment on his official and individual capacity section 1983 claims against the Defendant. Therefore, this Court finds the Defendant's Motion [38-1] for Summary Judgment should be granted, and that all claims against all Defendant should be dismissed with prejudice.

SO ORDERED, this the   20th   day of September, 2011.


_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE